UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
UNITED STATES OF AMERICA,

                            Plaintiff,

-against-

ABDEL HAMEED SHEHADEH,

                            Defendant.

MEMORANDUM OPINION

1:10-CR-1020 (ENV)
---------------------------------------------------------------x

VITALIANO, D.J.

Following a jury trial, defendant Abdel Hameed Shehadeh was convicted of three counts of making material false statements to government agents, in violation of 18 U.S.C. § 1001(a)(2), for lying repeatedly to federal agents about his attempt to travel to Pakistan in 2008 to join a violent insurgent group of Islamist terrorists.[1] The jury found in its answers to interrogatories on the verdict sheet that, with respect to two of the three counts of the indictment, the lies Shehadeh told the agents "involve[d] international terrorism." On June 24, 2013, the United States Probation Office issued its presentence investigation report ("PSR") that calculated Shehadeh's sentencing range under the United States Sentencing Guidelines ("U.S.S.G." or "guidelines") at 63 to 78 months imprisonment, on a total adjusted offense level of 26 and a criminal history category computation of I. In a letter submitted on July 24, 2013, and in its sentencing memorandum submitted on September 12, 2013, the government objected to the PSR on the ground that it incorrectly

---

[1] Additional background information may be gleaned from *United States v. Shehadeh*, No. 10-CR-1020 ENV, 2012 WL 7965381 (E.D.N.Y. Aug. 22, 2012); and *United States v. Shehadeh*, 857 F. Supp. 2d 290 (E.D.N.Y. 2012).

1

failed to apply the terrorism enhancement set out in § 3A1.4 of the guidelines.[2] Principally, the government argued that the enhancement was appropriate because Shehadeh's offenses were felonies that involved, or were intended to promote, a federal crime of terrorism. Had the enhancement been adopted, Shehadeh's offense level would have increased by 12 levels and his criminal history category would have been computed at VI, resulting in an advisory guidelines range of 210 to 252 months. Alternatively, the government gave notice that, if its objection were to be overruled, it would seek an equivalent upward variance pursuant to 18 U.S.C. § 3553(a) from the guidelines range as calculated in the PSR, based on the seriousness of Shehadeh's conduct.

At the September 20, 2013 sentencing hearing, the Court overruled the government's objection, declining to apply the § 3A1.4 enhancement. However, the Court determined that, in light of the serious nature of Shehadeh's conduct, an upward variance from the guidelines range was appropriate. Shehadeh, as a consequence, was sentenced to 156 months in custody: eight years on Counts 1 and 2, both terms to run concurrently, and five years on Count 3, to run consecutively to the sentences on Counts 1 and 2. This Memorandum Opinion expands on the Court's reasoning announced at the time of sentencing and is intended to provide additional insight into the Court's determination that the guidelines enhancement sought by the government was unwarranted as a matter of guidelines algebra, but that an upward variance in sentencing was appropriate.[3]

---

[2] Defendant also objected to the PSR on various other grounds not relevant to this opinion.

[3] In the post- *Booker* era, the line between "variance" and "departure" has been smudged. The government at times cast its request as one for an upward departure, but the Court understood the government's request to be for an upward variance in light of the factors set out in 18 U.S.C. 3553(a), and, as discussed further below, that is the course that the Court ultimately took.

## Discussion

An enhancement under guideline § 3A1.4 is warranted only if "the offense is a felony that *involved*, or was *intended to promote*, a federal crime of terrorism," as defined in 18 U.S.C. § 2332b(g)(5). U.S.S.G. § 3A1.4. (emphasis added). A "federal crime of terrorism" is defined in § 2332b(g)(5) as an offense that is (a) "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct;" and (b) is a violation of one of several specifically enumerated criminal statutes. 18 U.S.C. § 2332b(g)(5). In its sentencing memorandum, the government did not contend that Shehadeh's offenses "involved" a federal crime of terrorism, which would have required proof that Shehadeh had "committed a federal crime of terrorism." *United States v. Stewart*, 590 F.3d 93, 138 (2d Cir. 2009). Providing false information to federal agents, even if the misstatement "involve[d] international terrorism," is not itself a federal crime of terrorism, as defined in § 2332b(g)(5). The government did argue, though, that Shehadeh "intended to promote" a federal crime of terrorism. Specifically, it claims that Shehadeh did so when he attempted to join the United States Army, which he told friends—two of whom testified at trial—that he did in hope of waging jihad, including by gunning down comrades.

"[A]n offense is 'intended to promote' a federal crime of terrorism when the offense is intended to help bring about, encourage, or contribute to a federal crime of terrorism as that term is defined in 18 U.S.C. § 2332b(g)(5)." *United States v. Awan*, 607 F.3d 306, 314 (2d Cir. 2010). According to the government, Shehadeh's deception of the Army recruiter was "intended to promote" his attempt to kill or do serious bodily harm to United States soldiers on the battlefield overseas, a crime under 18 U.S.C. § 2332, which is one of the

3

enumerated crimes that qualifies as a "federal crime of terrorism" under § 2332b(g)(5).[4]

This argument succeeds at inflaming passion but fails at law for two separate reasons. First, while Shehadeh's attempt to join the Army for malevolent purposes was real, his conduct in doing so was simply too remote from an attack on American soldiers abroad to qualify as conduct warranting the § 3A1.4 enhancement. At bottom, the only offenses the government claims Shehadeh was "promoting" were those he wanted to

---

[4] 18 U.S.C. § 2332 provides, in relevant part:

(a) Homicide. Whoever kills a national of the United States, while such national is outside the United States, shall--
    (1) if the killing is murder (as defined in section 1111(a)), be fined under this title, punished by death or imprisonment for any term of years or for life, or both;
    (2) if the killing is a voluntary manslaughter as defined in section 1112(a) of this title, be fined under this title or imprisoned not more than ten years, or both; and
    (3) if the killing is an involuntary manslaughter as defined in section 1112(a) of this title, be fined under this title or imprisoned not more than three years, or both.
(b) Attempt or conspiracy with respect to homicide. Whoever outside the United States attempts to kill, or engages in a conspiracy to kill, a national of the United States shall--
    (1) in the case of an attempt to commit a killing that is a murder as defined in this chapter, be fined under this title or imprisoned not more than 20 years, or both; and
    (2) in the case of a conspiracy by two or more persons to commit a killing that is a murder as defined in section 1111(a) of this title, if one or more of such persons do any overt act to effect the object of the conspiracy, be fined under this title or imprisoned for any term of years or for life, or both so fined and so imprisoned.
(c) Other conduct. Whoever outside the United States engages in physical violence--
    (1) with intent to cause serious bodily injury to a national of the United States; or
    (2) with the result that serious bodily injury is caused to a national of the United States;
shall be fined under this title or imprisoned not more than ten years, or both.

commit himself. This sort of self-promotion is best understood as criminally trying to commit a federal crime of terrorism. The law of criminal attempt provides, the Court believes, insight and a helpful analogy. In order to be guilty of a criminal attempt, a defendant must (in addition to having the requisite intent to commit the underlying crime) have engaged in conduct which constitutes "a substantial step toward commission of the crime, conduct strongly corroborative of the firmness of the defendant's criminal intent." *United States v. Stallworth*, 543 F.2d 1038, 1040 (2d Cir. 1976). "A substantial step must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime." *United States v. Crowley*, 318 F.3d 401, 408 (2d Cir. 2003) (quoting *United States v. Manley*, 632 F.2d 978, 987 (2d Cir. 1980)). "[T]he identification of a substantial step, like the identification of attempt itself, is necessarily a matter of degree, that can vary depending on the particular facts of each case viewed in light of the crime charged." *United States v. Farhane*, 634 F.3d 127, 147 (2d Cir. 2011) *cert. denied*, 132 S. Ct. 833 (2011) (internal citations and quotations omitted) (noting that a verbal agreement to purchase drugs from a supplier is not a substantial step sufficient to convict the putative purchaser of attempted possession, but that such an agreement might constitute a substantial step when the crime at issue is a putative seller's attempted distribution). Shehadeh's attempt to join the Army in New York did not constitute a "substantial step" toward the commission of a homicide against United States nationals outside of the United States, as prohibited by 18 U.S.C. § 2332, such that it could be considered an attempt to commit that crime. Similarly, it does not constitute "promoting" that crime as that term is used in § 3A1.4 of the guidelines. Thanks to the diligence of federal agents and NYPD officers, Shehadeh never got to enlist, much less got

close to the completion of training and deployment overseas. What he did, as opposed to what he hoped to do, could not be characterized as conduct sufficient to have been "intended to promote" the overseas murder of Americans or any other "federal crime of terrorism." Simply, since the only criminal conduct the government alleges Shehadeh tried to promote was his own, the conduct—his deception and lies—must be more than "mere preparation" to commit a federal crime of terrorism. He never got beyond that. The stumble bum nature of Shehadeh's conduct may have saved him from an enhancement for "promoting" the commission of such crimes. It does not, however, diminish his seriously malevolent intent, nor hold him harmless from consideration of what might have been in determining the sentence to be imposed based on the totality of circumstances, viewed in the floodlight of § 3553(a).

There are other definitional obstacles to application of the terrorism enhancement. An act is a "federal crime of terrorism" only if it is "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5). Even if Shehadeh did intend to perpetrate or promote the killing of American soldiers abroad, the government would have had to demonstrate that he did so with this specific purpose, as the § 3A1.4 enhancement demands. In its sentencing memorandum, the government sought simply to piggy-back on the jury's finding that, with respect to Counts 1 and 2, Shehadeh's offenses "involve[d] international terrorism." The government pointed to the Court's instruction to the jury that "international terrorism" has the meaning given in 18 U.S.C. § 2331, and includes activities that "appear to be intended (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a

6

government by mass destruction, assassination, or kidnaping." The government's argument rests on the equivalence of the intent requirement for Shehadeh's crime of conviction and the intent requirement set forth in 18 U.S.C. § 2332b(g)(5). The argument fails.

Equivalence of the two standards is, in fact, lacking. The relevant intent standard is set forth in § 2332b(g)(5), and, while it is similar to the one provided in § 2331 that the jury found Shehadeh met, contrary to the government's contention, it requires a more specific showing. First, § 2332b(g)(5) requires the act to be "calculated" to have the requisite effect, while § 2331 requires only that the act "*appear* to be intended" to have the requisite effect. Further, an act can satisfy § 2331 if it appears to be intended to do one of three things: (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnaping. By contrast, an act can satisfy § 2332b(g)(5) if it was calculated to do one of two things: (i) influence or affect the conduct of government by intimidation or coercion, or (ii) retaliate against government conduct. While the difference may not be large, the jury could have applied the "involv[ing] international terrorism" aggravating factor based on a finding that Shehadeh's acts appeared intended to intimidate or coerce a civilian population, in which case those acts would not meet the § 2332b(g)(5) standard for a "federal crime of terrorism." More devastating to the government's argument, the jury's finding could mean far less. The jury, indeed, found only that Shehadeh's misstatements "involve[d]" international terrorism, a more tenuous finding than required for the guideline enhancement. The jury was instructed that "the verb involve means to cause a person or group to experience or participate in an activity or

7

situation." (Trial Tr. at 646:23-647:1). The jury was not required to make any finding that Shehadeh's acts were calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct. Bluntly, the jury found only that Shehadeh's lies involved international terrorism, that is, were related to conduct by someone, and not necessarily himself, that was intended to cause someone, not necessarily himself, to "experience or participate in" acts or attempted acts of terrorism. The § 3A1.4 enhancement, plainly, was not mandated by the jury's findings.

## The Sentencing

Sentencing begins with the algebra of guidelines calculation, which, in this case, requires rejection of the government's requested enhancement. But, it does not end there. In the world after *Booker*, the Court has the obligation to consider the appropriateness of the calculated sentencing range and whether departure or variance is warranted. *See United States v. Booker*, 543 U.S. 220 (2005). The Court gave pre-hearing notice that it would consider grounds supporting an above-guidelines sentence.

Included in the Court's sentencing considerations were the same acts upon which the government has founded its request for the terrorism enhancement. That good investigative work and luck may have frustrated Shehahdeh's plans, and prevented imposition of a sentencing enhancement, does not bar consideration by the Court of the serious and heinous objectives of Shehadeh's offenses. The Court first looked to the grounds for upward departure enumerated in §§ 4A1.3 and 5K2 of the guidelines, but found none appropriate,[5] and thus moved on to consider an upward variance based on the

---

[5] The PSR suggested that an upward departure from the recommended criminal history category might be appropriate under U.S.S.G. § 4A1.3 on the ground that "the defendant used several websites in order to promote acts of terrorism" during the course of his offense.

factors set out in 18 U.S.C. § 3553(a). *See, e.g., United States v. Garcia*, 12-4295-CR, 2013 WL 3155851 (2d Cir. June 24, 2013); *United States v. Brass*, 12-3179-CR, 2013 WL 2500582 (2d Cir. June 12, 2013); *United States v. Pope*, 554 F.3d 240, 244 (2d Cir. 2009); *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008).

The § 3553(a) factors that a court must consider before imposing a sentence include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; and (C) to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a). In this case, a sentence above the guidelines range was entirely appropriate to "reflect the seriousness of the offense," adequately "deter[]" the same kind of conduct, and "protect the public from further crimes of the defendant." § 3553(a)(2)(A)-(C). While Shehadeh displayed a significant level of immaturity and ineptness throughout the course of his criminal conduct, there is no question that his conduct was extremely serious and warrants a substantial period of incarceration. Well beyond a preponderance, the evidence was convincing that Shehadeh did want to join violent international jihad, and attempted to join the Army in contemplation of turning his weapons on his potential future military comrades. These intentions and contemplations inform his criminal conduct and make it the kind of serious

---

As also expressed during the sentencing hearing, the Court does not find the fact that Shehadeh created and administered websites regurgitating certain violent jihadist propaganda to be an appropriate basis for punishment consistent with the First Amendment. Nor does the Court believe that maintaining these websites constitutes "criminal conduct," as it must to trigger the enhancement under § 4A1.3.

criminal conduct warranting imposition of a significant sentence. The above-guidelines sentence of 156 months was appropriate to realize the objectives of § 3553(a).

Dated: Brooklyn, New York
November 1, 2013

                                                                          s/ ENV

                                         ERIC N. VITALIANO
                                         United States District Judge